Wardlaw, Oh.
I concur in the result which has been attained in this Court, as I believe that the process preferred here will achieve the end aimed at in the Circuit Decree, and that it is not substantially different from the scheme of the decree.* I propose, however, to say something in vindication of the precise plan adopted by the Chancellor.
Upon the petition of the trustees of the Greenville Academies, the Chancellor gave the trustees leave to transfer their trust estate and the trusts connected with it, to either of two other corporations, the Baptist Convention of South Carolina, or the trustees of Furman University, on the condition that the trusts originally declared concerning the estate, should be fully executed; with further leave to the trustees to apply at the foot of the decree, when the transfer of estate and substitution of trustees should be negotiated, for the *480 order of the Court confirming the substitution or other order in execution of the decree. The Chancellor did not definitively confirm any particular substitution; but he did adjudge that the trustees of the G-reenville Academies had the right to transfer their trust and estate, and that both the Baptist Convention and the Eurman University might receive the trust estate, and execuce the trust. The trust estate in question consists of the remnant of a tract of land conveyed by Vardry McBee, August 12, 1820, to six persons described as “ the present acting trustees of the Greenville Academy,” and to their successors in office, or a majority of them or their assigns ; and of buildings which have been erected on this land, at the expense and by the contribution of many persons of different religious belief.
The deed of Y. McBee purports to be executed on “ the consideration of having a Male and Female Academy established near Greenville C. H.,” and on the “ trust for the use of the said Academy.” The persons named in this deed did not at the time constitute a corporation; but they, with others added to their number, were incorporated as trustees of the Greenville Academies, in December, 1820, with the usual powers of corporate bodies, and with express power to hold and alien real estate. — 8 Stat. 312.
First, as to the power of the Court to make the decree in question. Independently of the Act of 1796, (5 Stat. 278,) the Court of Equity has inherent jurisdiction to appoint new trustees, in substitution of former trustees, wherever application is properly made, and the circumstances make the change advantageous. This jurisdiction is equally exercised, whether the instrument creating the trust contains a power to appoint new trustees, or is silent on the subject. Webb v. Earl of Shaftesbury, 7 Ves. 480; In re Fauntleroy, 10 Sim. 252; Finlay v. Howard, 2 Dr. & W. 490. And the fact that the original trustees were appointed by an Act of the Legislature, imposes no limit to the power of the Court to substitute other trustees. *481 Buchanan v. Hamilton, 5. Ves. 722. The Act of 1796 simply provides for the substitution of new trustees, in exoneration of former trustees, where the beneficiaries consent to the substitution ; and it does not apply to the cases, iu which the jurisdiction is frequently exercised, of the death and misconduct of the trustees. In the present case, resort is necessarily had to the prior and inherent jurisdiction of the Court. The beneficiaries cannot be individually ascertained, and of course cannot consent to a substitution of trustees, for all the people in the Commonwealth are interested in the subject of education, and incidentally in the establishment of a Male and Female Academy at Greenville C. H. InjMs^predicament, the voice of Jdie, trustees speaks not only the consent of the corporation, but the, consent ais A of the beneficiaries. In a corporation, the voice of the majority is declarative of the will of the whole; for a cor-'"poralion ís one""artificial person, and can have one. will only, manifested by the resolution of the majority. Insurance Co. v. Sebring 5 Rich. Eq. 342. Dissentients from, the majo.rir ty can be noticed by Courts, _onIy. as_.the.y-_ present facts operating on the discretion of Courts, in executing,the regular applications" of the corporation. In the ease of natural persons appointed as trustees, it is against the usage of the Court of Equity to remove them, without their consent, even where the beneficiaries desire the removal, unless the trustees be dead or resident without the State, or be shown to mismanage the trust» or to be otherwise unfit for the office, Gibbes v. Smith, 2 Rich. Eq. 131. But the authority of the Court to remove and substitute at judicial discretion, is unquestionable. In an old ease, in the reign of Charles 2, (Uvedale v. Patrick, 2 Ch. Ca. 129,) a trustee was removed, and another substituted, altnough he was desirous of acting, because his co-trustees declined to act with him. The Lord Chancellor remarked, that he liked not that a man should be ambitious of a trust, where he can get nothing but trouble by. it, and declared that, without any reflection on the trustee, he should meddle no further with the trust.
*482 It is clear that the trustees of the Greenville Academies have the power to alien the estate belonging to them, and of course to impose conditions and trusts in any particular alienation.— All corporations, if not disabled by statute, have by law a general right of alienating their property; and their consequent power of appointing trustees, on any disposition made by them, is co-extensive with this right. Att’y Gen. v. Aspinwall, 2 M. and Cr. 613; Att’y Gen. v. Wilson, 1 Cr. and P. 1. In the case before us, the estate was conveyed to the trustees, and to their assigns, and when afterwards incorporated, express power was conferred on the corporation to alien the estate: a fortiori, the corporation may appoint trustees and impose trusts on any alienation.
It seems to me equally clear, that both of the corporations, to one of which it was proposed to transfer the estate and surrender the trust, were competent to accept the trust, and compella-ble to execute it,„if excepted. The Baptist Convention of South Carolina was incorporated in 1825', (8 Stat. 346,) with the usual powers of corporate bodies, and with express power to take and alien real or personal estate; and its objects and purposes were declared to be “ to erect and establish an academical and theological seminary, for the education of youth generally, and of indigent, pious young men particularly, who may be designed for the gospel ministry, and for all other purposes necessary for carrying the foregoing objects into effect.” It is quite obvious that the promotion of education wr.s the general purpose of this corporation, and that it had express power to establish a “ seminary for the education of youth generally,” without limitation to the male sex. The Furman University was incorporated in 1850, (12 Stat. 37,) with express power to take real or personal estate to the extent of thirty thousand ■dollars, and to prescribe the course of study to be pursued by students, and to do all things for the benefit of the university, as amply as a private person or a body politic could do. Here again, the business of the corporation is education, and there is *483 no restriction as to sex. A chartered university has authority to teach all knowable. things, and as a necessary incident, to establish subordinate schools for this purpose.
It was faintly suggested that a corporation could not be a trustee. It is the familiar doctrine of the Court, that a trust shall not fail for lack of a trustee. All persons capable of taking a beneficial interest in property, and some others, may hold as trustees for the benefit of other persons. Femmes coverts, infants, idiots, lunatics, and other persons not sui juxis, may be trustees, subject of course to their legal incapacity to deal with the estate vested in them! In early times, it was held that none but those who were capable of being seised to a use, (and under the statutes of mortmain, not of force here, a corporation was not thus capable in England,) could be a trustee ; and .that a corporation was further disqualified as trustee, as lacking the requisite of confidence in the person; but this doctrine has been long exploded as too artificial and unsound. It is now settled that a corporation may be a trustee, in the same manner and to the same extent as any private person. Green v. Rutherforth, 1 Ves. Sen. 468; Att’y Gen. v. Foundling Hospital, 2 Ves. jun. 46; Att'y Gen. v. Landerfield, 9 Mod. 287; Vidal v. Girard, 2 How. 187. In truth, nearly all corporations are trustees; as an incorporated Bank for the stockholders.
If a particular trust be inconsistent with the purposes for which the corporation was created, the corporation is an unsuitable trustee, and not compellable to execute the trust; but if the purposes of the trust be germane to the objects of the incorporation, if they relate to matters which will promote and perfect those objects, a corporation is as fit a trustee as any natural person, and equally under the control and direction of the Court. As Judge Story remarks, in delivering the opinion of the Supreme Court of U. S., in Vidal vs. Girard, “there is no positive objection, in point of law, to a corporation taking property upon a trust not strictly within the scope of the direct *484 purposes of its institution, but collateral to them; nay, for the benefit of a stranger or of another corporation.” Thus in Green vs. Rutherforth, 1 Ves. 462, where there was a devise to St. John’s College, in Cambridge, of the perpetual advowson of a rectory in trust that the presentments to the church should be made in an order prescribed, it was determined that the College, although having a visitor appointed by the founder, ■was obliged to execute this additional trust under the direction of the Court. So too, in Vidal vs. Girard, it was held that the city of Philadelphia, incorporated with ordinary powers for B" unicipal government, was competent to receive and execute a trust for the establishment of a college. In the case of Thomas vs. Ellmaker, Parson’s Select Cases in Equity, 118, it is said that a corporation cannot be a trustee in a matter in which it has no interest; but counsel misapprehend this doctrine when they insist that it imports any restriction on the acquisition of further property, in trust, not existing at the date of the charter. A corporation cannot have an interest in estate until acquired; but no impediment to the acquisition of further estate for corporate purposes, in trust or otherwise, could be imposed by a Court. The whole force of the dictum is, that a corporation cannot be a trustee for objects and purposes in which it has no interest. For example, a bank would be an unfit guardian for an infant. But in the case before us, both of the corporations suggested as substitutes for the trustees of the Greenville Academies, were incorporated for the same general purpose of education as the original trustees were, and have full power to execute the trusts under the direction of the Court.
It was gravely argued, that the substitution proposed in the circuit decree involved an utter perversion of the trust, and overran the provision of the Constitution of the United States inhibiting the passage, by a State, of any law violating the obligation of contracts. The case of Dartmouth College vs. Woodward, 4 Wheat. 518, which was principally relied upon, contains sound *485 and approved doctrine, but it has no application to the present case. There the legislature of New Hampshire undertook to set aside provisions previously made by legislative authority in favor of special trustees, and conferring a beneficial interest on the trustees, against their consent. Here the old trustees consent to the substitution and apply for it, and^ have ;nq beneficial interest in the trust. The obligation of no contract is infringed.' It is supposed that, as the contributions for the erection of the Academy buildings were made by persons of variant faith, it defeats the wishes of the contributors, and violates freedom of opinion, to devote the lands and buildings to the supervision of a particular sect of Christians. Undoubtedly, under our constitutions, there should be no ratification or preference by Courts of any particular creed. But the placing of a school under the patronage and supervision of a particular sect, implies no preference of this sect. The decree attempted to provide carefully against such preference. It is always desirable to enlist, in support of a school, many persons associated by any common bond or tie. I have no special fondness for the sect to which the benefit of my decree might enure; and I frankly avow, that under the proof given of the advantages of the substitution, I should, under like circumstances, have directed a substitution to the College of Jesuits, the Sisters of Mercy, the Abolitionists of Slavery, or any other person, natural or artificial, capable of executing the trust. A school, under the patronage of a particular denomination of Christians, is not necessarily sectarian. Teachers of different faith are frequently employed, and students of all classes are earnestly invited. ■ In my private opinion, denominational schools are more likely than any others to be successful in our State, and that any evils from them may be corrected by our College, which admits and brings into communion persons of every faith, who possess competent scholarship.
It is further objected to the circuit decree, that it amounts to the extinction or complete transfer of the original charter, *486 which can be rightfully effected by the legislature alone. It may be conceded that the Court has no authority to diminish the powers of one corporation, or add to those of another; but it is a misconception of the decree to suppose it contemplates any such thing. It simply deals with particular estate, and the trusts connected with it, and does not tamper with charters. The trustees of the Greenville Academies are left, with all their, powers, to acquire other estate by escheat or otherwise, and if the Baptist Convention, or the Furman University, did not have competency, before the decree, to accept and execute an educational trust, neither can do so now. The Court did no more than, in the exercise of an established jurisdiction, to change the trustees, with their consent, who held a tract of land in trust.
If the Court had the power to decree the substitution of trustees, and if the one corporation could surrender and the other could receive and execute the trust, as I have endeavored, to show, then the selection of the new trustees was altogether within the discretion of the Chancellor, and is not a subject for. review by an appellate tribunal. It would be easy, if necessary, to show that this discretion was judiciously exercised in this instance, particularly as it was desired by the founder of the charity, and demanded by the interests of the local community most immediately concerned in the charity.
In conclusion, I repeat that the order on circuit was inchoate, and that it was contemplated, when the final order for substitution should he proposed, to secure, by the appointment of a visitor and other guards, the faithful execution of the trust by the substituted trustees.
Daegan, Ch., concurred.
O’Neall, J., being a trustee of the Furman University and of the Baptist State Convention, gave no opinion.
Munro, J., was sick, and therefore absent.

Motion granted.

 when this opinion was prepared, I understood the judgment of the majority of the Court to he, that the petition should he retained, and the petitioners be instructed that they already possessed the power, by conveyance of their estate on the same trusts to their proposed successors, of achieving substantially the object of the petition. It seems to me that the doubts and obstructions in the way of the petitioners as to the transfer of their estate and trusts, entitled them as trustees of a charity to apply to a Court of Equity for advice and aid. If I had supposed the Court intended to dismiss the petition, I should not have intimated acquiescence in the result.